**SO ORDERED.**

**SIGNED this 28 day of August, 2018.**

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

MICHAEL ABIODUN AYODELE                      CASE NO. 17-05693-5-SWH
                                             CHAPTER 13
    DEBTOR

**ORDER DENYING MOTION TO PAY MORTGAGE OUTSIDE PLAN**

The matter before the court is the Motion to Pay Mortgage Outside Plan filed by the chapter 13 debtor on May 8, 2018, Dkt. 14 (the "Motion"). A response in opposition was filed by the chapter 13 trustee on May 25, 2018, Dkt. 15. A hearing was held in Raleigh, North Carolina on June 21, 2018, following which the court took the matter under advisement and invited the parties to file supplemental memoranda regarding the issues raised at the hearing. Both parties filed supplemental briefs on July 23, 2018, Dkts. 22 and 23. After a review of the case record, pleadings, and parties' arguments, the Motion will be denied.

**BACKGROUND**

Michael Abiodun Ayodele filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on November 21, 2017. With his petition, Mr. Ayodele filed all required schedules and statements as well as a chapter 13 plan (the "Proposed Plan"), Dkt. 2. On Schedule

A/B, Mr. Ayodele listed ownership of real property located at 117 Verde Glen Drive, Garner, North Carolina (the "Property") and scheduled the Property's value at $160,000.00. On Schedule D, Mr. Ayodele listed Ditech Financial, LLC ("Ditech")[1] as holding a claim in the amount of $143,689.00 secured by a first-position deed of trust against the Property. The Wake County Revenue Department is also listed on Schedule D as holding a claim in the amount of $2,329.89 secured by a lien against the Property.

Based upon Mr. Ayodele's statement of current monthly income filed with the petition, his applicable commitment period is three years. *See* 11 U.S.C. § 1325(b)(4). In his Proposed Plan, Mr. Ayodele indicates that he intends to pay the claims of Ditech, Wake County Revenue Department, and Local Government Federal Credit Union ("LGFCU"), whose claim is secured by a 2006 Mercedes vehicle, directly and outside of the chapter 13 plan. Accordingly, Mr. Ayodele's Proposed Plan requires him to pay the sum of $5,820.00 over thirty-six months. This figure consists of payment of attorney's fees in the amount of $5,335.00 plus a trustee commission of $485.00. The Proposed Plan does not provide for any dividend to unsecured creditors and does not provide for payment to any other creditor.

On December 11, 2017, Ditech filed a proof of claim. See Proof of Claim No. 4-1 (the "Proof of Claim"). Attached to the Ditech's Proof of Claim is Official Form 410A, which is a mortgage accounting statement. The attached form states that the total debt owed to Ditech and secured by the Real Property was $149,617.62 as of the petition date, including prepetition arrears in the aggregate amount of $6,682.66. The contractual monthly payment due on the underlying note held by Ditech is $1,094.03. Of this figure, $709.21 represents principal and interest, and $384.82 is allocated towards monthly escrow.

---

[1] Mr. Ayodele only intends to pay the ongoing payment due to Ditech; he made no arrangement through his plan or directly for payment of the prepetition arrearage due.

2

No confirmation hearing has been set or conducted by the court. Mr. Ayodele filed the instant Motion on May 8, 2018, Dkt. 14. In the Motion, Mr. Ayodele seeks to be excused from compliance with E.D.N.C. Local Bankruptcy Rule 3070-2(b)(1) (the "Local Rule"). The Local Rule requires that monthly mortgage payments be made through the plan, but specifically allows a debtor to be excused from compliance "in the discretion of the chapter 13 trustee or by order of the court," which is the provision under which Mr. Ayodele seeks relief in his Motion. E.D.N.C. L.B.R. 3070-2(b)(1). The chapter 13 trustee opposed the relief requested in the Motion. As a result, the court conducted a hearing on June 21, 2018.

At the hearing, Mr. Ayodele testified extensively regarding his residential mortgage. He explained that he originally executed the note[2] and deed of trust against the Real Property in October of 2002. In May of 2017, prior to filing the petition, Mr. Ayodele participated in a loan modification program with Ditech. At the time of the modification, Mr. Ayodele was two months' delinquent on his obligation to Ditech. After completing three trial payments in the amount of $1,123.44 per month, Ditech modified Mr. Ayodele's loan in late 2017. The modification reduced the note's interest rate and reamortized the obligation's balance over a new thirty-year period.

Mr. Ayodele filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code following the modification on November 21, 2017. Post-petition, Mr. Ayodele continued to remit payments directly to Ditech in the amount of $1,049 per month via MoneyGram money orders. Mr. Ayodele believed that this figure was the correct monthly amount due and owing to Ditech.

Mr. Ayodele also testified regarding his current financial situation and other assets. He resides with his significant other and one dependent son at the Real Property. He presently owns

---

[2] Motayo Oloketuyi Ayodele is a co-debtor on the mortgage.

3

three vehicles:[3] (1) a 2006 Mercedes, which is valued at $13,525.00, encumbered by a lien held by LGFCU in the amount of $6,986,[4] and in need of repairs; (2) an unencumbered 2004 BMW X5, valued at $1,275.00 and driven exclusively by his adult, non-dependent daughter; and (3) an unencumbered 2002 Mercedes S430, valued at $4,000.00. Mr. Ayodele pays all insurance costs for the three vehicles. Mr. Ayodele's other assets consist of ordinary household goods, all of which were claimed as exempt.

Pursuant to his Schedule I and testimony at the hearing, Mr. Ayodele's net household monthly income is $2,329.05. Pursuant to his Schedule J and testimony at the hearing, his household monthly expenses are $2,211.00, inclusive of the monthly mortgage payment to Ditech, a car payment to LGFCU in the amount of $416.00 per month, and vehicle insurance premiums in the amount of $278.00 per month. After expenses, Mr. Ayodele's monthly net disposable income is $118.05. According to Mr. Ayodele, his monthly budget is "very tight . . . [and] every penny counts."

## PARTIES' POSITIONS AND ISSUE

In the instant Motion and supplemental brief, Mr. Ayodele advances several arguments as to why abrogation of the Local Rule is warranted in this case. As his legal argument, he asserts that the Local Rule is "not valid," is inconsistent with and exceeds the bankruptcy court's authority, and impermissibly modifies his statutory rights as a chapter 13 debtor. Practically speaking and as applied to his particular case, Mr. Ayodele further asserts that compliance with the Local Rule will

---

[3] Following the hearing, Mr. Ayodele filed an affidavit regarding his vehicles, Dkt. 21. In the affidavit, he explains why he owns and insures three vehicles. The 2004 BMW X5 is driven by his adult daughter, who is currently attending college. The 2002 Mercedes is high-mileage, such that Mr. Ayodele is concerned about its long-term viability as a transportation option. The 2006 Mercedes is in need of significant repairs but is presently operable. Mr. Ayodele's significant other does not personally own a vehicle. As a result, she uses Mr. Ayodele's 2002 Mercedes for household needs, including to transport Mr. Ayodele's dependent son.

[4] At the hearing, Mr. Ayodele testified that the balance owed to LGFCU is approximately $3,900.00 as of June 2018. He believes that the LGFCU debt secured by a lien on the 2006 Mercedes will be paid in full by December 2019.

4

negatively affect his federal home mortgage interest income tax deduction, will ultimately delay his discharge at the conclusion of his chapter 13 plan, and will impose an additional, unnecessary surcharge on his monthly mortgage payment by way of the chapter 13 trustee's statutory commission. Based on these assertions, he requests the court excuse him from the Local Rule's requirement to pay his mortgage payment through the chapter 13 trustee and instead proposes to remit his mortgage payment directly to Ditech pursuant to E.D.N.C. L.B.R. 3070-2(b)(2).

In his response, the chapter 13 trustee states that the Local Rule is a "permissible exercise of the court's discretionary power" and does not modify a debtor's substantive rights under the Bankruptcy Code. The trustee specifically argues that the Local Rule does not abridge a debtor's rights because the rule itself provides that a debtor may request to be excused from the conduit mortgage procedure. Furthermore, he argues that it would not be appropriate to excuse compliance with the Local Rule in Mr. Ayodele's circumstances.

Accordingly, the issues before the court are: (1) whether the Local Rule is consistent with the Bankruptcy Code and within the court's authority and (2) whether, in Mr. Ayodele's case, it would be appropriate to excuse him from compliance with the Local Rule.

**DISCUSSION**

A. Governing Statutes and Rules

*1. Rule-Making Authority*

Section 2075 of Title 28 of the United States Code provides that the "Supreme Court shall have the power to prescribe by general rules . . . the practice and procedure in cases under [T]itle 11 [of the United States Code]." 28 U.S.C. § 2075. In enacting this statute, Congress sought "to provide for the promulgation of rules of practice and procedure under the Bankruptcy Act . . . ." Pub. L. No. 88-623 (Oct. 3, 1964).

5

Federal Rule of Bankruptcy Procedure 9029(a)(1) provides that "[e]ach district court . . . may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of— Acts of Congress. . . ." FED. R. BANKR. P. 9029(a)(1). The rule also allows "a district court . . . [to] authorize the bankruptcy judges of the district . . . to make and amend rules of practice and procedure . . . which are *consistent with . . . Acts of Congress* . . . ." *Id*. (emphasis added); *see also No v. Gorman*, 891 F.3d 138, 141 (4th Cir. 2018) (explaining that "a local rule of bankruptcy procedure cannot be inconsistent with the Bankruptcy Code").

The Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of North Carolina are promulgated in accordance with the authority granted in Federal Rule of Bankruptcy Procedure 9029(a)(1). The Local Bankruptcy Rules function to "facilitate the administration of bankruptcy cases, to assist the court in the management of contested matters and adversary proceedings, and to provide for uniformity in local practice in this court." E.D.N.C. LBR Preface.

*2. Local Bankruptcy Rule 3070-2*

Local Bankruptcy Rule 3070-2(b)(1) requires a chapter 13 debtor to remit contractually due monthly mortgage payments directly to the chapter 13 trustee. The chapter 13 trustee then disburses the received monthly mortgage payments to the appropriate secured creditor and earns an approximate 8% commission for his role in processing and disbursing the payment. *See* 28 U.S.C. § 586(e)(2). Such payments are referred to as "conduit payments." E.D.N.C. L.B.R. 3070-2(a)(2). The Local Rule provides:

> Chapter 13 Debtors *shall remit* all Mortgage Payments owed by them to the Chapter 13 Trustee for disbursement to the Real Property Creditor.

E.D.N.C. L.B.R. 3070-2(b)(1) (emphasis added).

6

E.D.N.C. Local Bankruptcy Rule 3070-2(b)(2) specifically allows a debtor to be excused from the Local Rule "in the discretion of the chapter 13 trustee or by order of the court." E.D.N.C. L.B.R. 3070-2(b)(2). Accordingly, the procedure in this district is that a debtor will make conduit mortgage payments via the chapter 13 trustee, unless he or she is excused from compliance with the Local Rule.

### 3. Relevant Bankruptcy Code Provisions

Several provisions of chapter 13 of the Bankruptcy Code are relevant to the court's analysis. Section 1321 provides that a "debtor shall file a plan." 11 U.S.C. § 1321. Sections 1322 prescribes the requirements for the contents of a debtor's plan and states, in relevant part:

> (a) The plan—
>> (1) shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan . . .
>
> \*\*\*
>
> (b) Subject to subsections (a) and (c) of this section, the plan may—
>> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

11 U.S.C. §§ 1322(a)(1) and (b)(5).

Section 1326 governs payments made under a chapter 13 plan. Section 1326 provides that:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . .
>
> \*\*\*
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

11 U.S.C. § 1326(a)–(c).

B. Consistency with the Bankruptcy Code's Provisions

The Local Rule at issue is consistent with the Bankruptcy Code's statutory provisions. The Bankruptcy Code's text requires a debtor to file a plan and remit monthly payments to the chapter 13 trustee pursuant to §§ 1321, 1322(a)(1), and 1326(a). Section 1326(c) obliges the chapter 13 trustee to make distributions to creditors under the plan, unless otherwise ordered by the court. To effectuate those statutory dictates, the Local Rule requires a debtor to remit monthly mortgage payments to the chapter 13 trustee, from which the trustee makes a monthly distribution to the mortgagee. This process clearly comports with the chapter 13 procedure contemplated by the Bankruptcy Code.

The court acknowledges that nothing in the Bankruptcy Code expressly prohibits direct payments to creditors by a debtor. However, the statutory text of chapter 13 of the Code collectively creates a presumption that the chapter 13 trustee will serve as the disbursing agent during the pendency of a debtor's plan. *See, e.g.*, *In re Slaughter*, 188 B.R. 29, 31 (Bankr. D.N.D. 1995) (citing S.Rep. No. 889, 95th Cong., 2d Sess. 142 (1978)) (explaining that while "there is no express statutory prohibition preventing direct payments, the presumption has always been for distribution made by the trustee").

The Local Rule reflects the intent of the Bankruptcy Code, while recognizing that under certain circumstances, direct mortgage payments should be permitted. In fact, the Local Rule provides an express mechanism by which a debtor may request to be excused from compliance with it. Nothing in the Local Rule prohibits a debtor from demonstrating he should be excused from compliance based on his particular circumstances, and the decision to excuse a debtor from compliance with the Local Rule, i.e. permit a debtor to "act as his own disbursing agent, is left to" the bankruptcy court. *In re Reid*, 179 B.R. 504 (E.D. Tex. 1995). In this district, there are

8

several circumstances where the trustee, without court intervention, routinely agrees to excuse a debtor from compliance with the Local Rule. For example, this occurs where the debtor is participating in a trial loan modification and must remit payments directly to the mortgagee to qualify, and where the debtor has never been late with or missed a mortgage payment and would therefore be prejudiced by the two-month administrative delay in disbursing payment through the trustee.

C. Consistency with the Bankruptcy Code's Purpose

The purpose of the Bankruptcy Code is twofold: "(1) to provide a procedure to give certain debtors a fresh start and (2) to maximize the payment to creditors." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (ordinals added); *see also Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554–55 (1915) (explaining that the purpose of the Bankruptcy Code is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon . . . misfortunes"). In particular, "the purpose of chapter 13 is to enable debtors to adjust their debts by creating a plan to pay their debts out of future income." *In re Barnes*, No. 12-06613-8-RDD, 2013 WL 153848, at *10 (Bankr. E.D.N.C. Jan. 15, 2013). Accordingly, "it seems clear that there is imposed on the bankruptcy court the responsibility and the right to exercise its powers to insure that the [Bankruptcy Code's] purpose is really accomplished." *Helms v. Holmes*, 129 F.2d 263, 271 (4th Cir. 1942). This court previously explained that "[i]n the chapter 13 context, the court is most concerned with the debtor's completion of his or her plan, such that he or she receives a discharge and the financial fresh start intended by the Bankruptcy Code . . . ." *In re Butala*, Case No. 15-02624-5-SWH (Bankr. E.D.N.C. July 10, 2018); *see generally In re Ripley*, No. 14-01265-5-DMW, 2018 WL 735342.

9

The Local Rule at issue facilitates the Bankruptcy Code's overarching purposes in several ways. First, the conduit process creates an orderly procedure by which monthly mortgage payments are disbursed and detailed records are kept by the trustee. This allows the chapter 13 trustee to ensure that secured real property creditors timely receive monthly mortgage payments as well as any prepetition arrearage amounts owed. Upon completion of a conduit chapter 13 plan, E.D.N.C. LBR 3070-2(e) enables the court to deem any defaults cured, to deem a mortgage loan current, and to extinguish a secured creditor's rights to recover any amounts accruing post-petition. Taken together, this result is administratively efficient and ultimately beneficial to both debtors and creditors. *See In re Calder*, No. 14-31181, 2015 WL 1015312, at *1 (Bankr. W.D.N.C. March 4, 2015) (explaining that the "advent of the conduit mortgage payment program greatly streamlined . . . issues by vesting the monitoring and administration of mortgage payments in the chapter 13 trustees and virtually eliminated disputes regarding . . . payment histories").

Second, the conduit mortgage process offers an efficient solution for debtors. Mortgages typically represent the largest secured claim in a chapter 13 case, and debtors are often delinquent on their monthly mortgage payments on the petition date. The Local Rule enables a debtor to make a single monthly plan payment to the chapter 13 trustee to service the majority of his debts. In turn, this single payment system permits a debtor to focus on financial rehabilitation, "simplifies the debtor's finances, and allows for better supervisory control by the chapter 13 trustee." *In re Vigil*, 344 B.R. 624 (Bankr. D.N.M. 2006); *see also In re Teagardner*, 98 B.R. 318, 321 (Bankr. S.D. Ohio 1989) (explaining that the conduit mortgage procedure "serves the salutary policy of facilitating performance under chapter 13 plans . . . ."). This is especially helpful where, as is the case here, a debtor is delinquent on mortgage payments at the outset of the case, and this result comports with the Bankruptcy Code's goal of affording a debtor a fresh start.

Further, a lapse in direct mortgage payments, which are not subject to ongoing trustee supervision, may jeopardize a debtor's discharge. If a debtor's confirmed plan provides for direct mortgage payments, but the debtor is delinquent on those payments at the conclusion of his plan, he may be ineligible for a § 1328 discharge. *See In re Evans*, 543 B.R. 213, 224 (Bankr. E.D. Va. 2016) (explaining that "when a debtor is delinquent in making direct payments . . . pursuant to a confirmed plan, she is not entitled to receive a chapter 13 discharge . . . ."); *see also In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014) (finding that "debtors are entitled to receive a discharge only when they meet all requirements of chapter 13, including payments under the plan and the 'maintain and cure' provisions of § 1322(b)(5)").

While this court has not yet had the opportunity to determine whether a default on direct payments would result in ineligibility for a § 1328 discharge, the Local Rule protects against this possible outcome. Under a conduit mortgage plan, the trustee timely disburses mortgage payments owed and resolves payment discrepancies with mortgagees. As a result of this service, a debtor who remains current in payments on a confirmed conduit plan may confidently assume that all payments "under the plan" will have been properly disbursed, such that he is eligible for a § 1328 discharge and the fresh start contemplated by the Bankruptcy Code.

Finally, this court has previously explained that "[c]hapter 13 comes with privileges and obligations." *In re Ripley*, 2018 WL 735342, at *3 (Bankr. E.D.N.C. Feb. 6, 2018). In availing one's self of chapter 13 bankruptcy protection, a debtor is obligated to comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and all applicable Local Rules. These obligations, including the conduit mortgage Local Rule in this district, are known at the outset of any case and should be considered prior to the filing of a voluntary petition for relief.

D. Court's Authority to Prescribe Local Rule

11

As discussed above, the Local Rule is consistent with the statutory text and purpose of the Bankruptcy Code. The Local Rule serves a valid function in the ongoing administration of chapter 13 cases in this district and is not duplicative of nor inconsistent with any Congressional directive. Accordingly, the Local Rule is within this court's authority to prescribe and enforce. *See* FED. R. BANKR. P. 9029(a)(1).

E. Practical Considerations

In his motion and memorandum, Mr. Ayodele raises several practical concerns regarding his compliance with the Local Rule. The court will address each of these considerations in turn.

*1. Impact on Home Mortgage Interest Tax Deduction*

First, Mr. Ayodele contends that compliance with the Local Rule will impact his federal home mortgage interest tax deduction (the "1098 Deduction"). Specifically, Mr. Ayodele alleges that if he complies with the Local Rule, the disbursement of his mortgage payments will be delayed, such that his annual 1098 Deduction interest statement will not reflect those delayed payments. As a result, he argues that his annual 1098 Deduction interest statement will be inaccurate, and he will be unable to claim the full deduction amount to which he is entitled.

The effect on the debtor's interest deduction caused by a delay in disbursement to the mortgagee is *de minimis*, at best. The court is not persuaded that the possible reduction in an interest deduction trumps the overwhelming benefits that will inure to the debtor by partaking in conduit payments, such as certainty in the amounts owed to the creditors and the records of the trustee to support his position with the creditor. The court notes that the debtor will experience the same reduction in his federal home mortgage interest tax deduction by virtue of his failure to treat the prepetition arrearage owed to Ditech either directly or through the plan. Clearly, such an impact is not important to the debtor.

*2. Payment of the Chapter 13 Trustee's Commission*

Mr. Ayodele further contends that payment of the trustee's 8% commission on his monthly mortgage payment is unduly burdensome to his financial situation. The trustee's estimated commission is approximately $88.00 per month based on Mr. Ayodele's current monthly mortgage payment of $1,094.00, which amounts to $3,168.00 over the life of a three-year chapter 13 plan or $5,280.00 over the life of a five-year chapter 13 plan. The court notes that Mr. Ayodele's § 1325(b)(4) applicable commitment period is thirty-six months, but he proposes to make plan payments over sixty months under the Proposed Plan. This decision – whether to commit to a three-year or five-year plan – belongs entirely to the debtor in this case. By electing to stretch his plan payments over five years instead of three, Mr. Ayodele is voluntarily subjecting himself to a greater trustee commission.

The court recognizes that payment of the trustee's commission on conduit mortgage payments will impose an added expense on Mr. Ayodele's monthly budget. However, in exchange for the commission, Mr. Ayodele will receive several benefits from the trustee. Those benefits include: timely distributions to Ditech, a cure of all outstanding prepetition arrears (if the plan is amended to include payments on prepetition arrears), and consistent monitoring of his mortgage account's status during the pendency of the plan. The final gift to the debtor will be the trustee's motion to determine the balance at the conclusion of the plan.

Because the trustee system is funded entirely by commissions on payments, excusing a debtor from compliance with the conduit procedure "for the sole purpose of avoiding the trustee's percentage fee" is inappropriate. *In re Perez*, 339 B.R. 385, 410 (Bankr. S.D. Tex. 2006), *aff'd sub nom. Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007) (citations omitted). Trustees serve many roles beyond that of disbursing agent, and in filing chapter 13, debtors should expect to fund "the

13

administrative costs and burdens of the very system he resorts to for relief." *In re Teagardner*, 98 B.R. 318, 321 (Bankr. S.D. Ohio 1989). While Mr. Ayodele contends that the trustee's "8% commission is excessive and unfair," the court believes that the figure is entirely reasonable in light of the services rendered by the trustee for the benefit of the debtor. The debtor must "pay to play," and the existence and effect of the Local Rule should have been taken into consideration during his decision to file for bankruptcy protection.

### *3. Delay in Entry of Discharge*

The Debtor argues that compliance with the Local Rule will delay entry of his § 1328 discharge. Specifically, Mr. Ayodele asserts that because of the Local Rule's requirements, the trustee must take several steps before a discharge may be entered, which results in unnecessary delay. He alleges that debtors in non-conduit cases receive their discharges in a matter of weeks following completion of their chapter 13 plans, while conduit case debtors must wait months. The debtor presented no evidence to substantiate this allegation, and the court presumes it stems from anecdotal experience. However, any such delay in time is likely attributable to the trustee's completion of several tasks following plan completion, all of which benefit the debtor, including: (1) filing of a Federal Rule of Bankruptcy Procedure 3002.1(f) notice; (2) reconciling the trustee's payment history with the mortgage company's payment history; and (3) the filing of a motion to deem mortgage current, if appropriate. Thus, the delay is entirely reasonable.

### *4. Potential Sale of the Property*

In his memorandum, Mr. Ayodele expresses concern over the effect of a conduit payment upon a hypothetical later sale of the Real Property. Mr. Ayodele contends that compliance with the Local Rule will "lock in" a plan payment that includes the $1,094 figure to be paid to Ditech. He argues that should he choose to sell the Real Property at some point during the plan and thereby

satisfy Ditech's claim in full, his monthly plan payment will nonetheless continue to require $1,094 for disbursement to other creditors.

This argument is unavailing. If the debtor's financial situation changes, such that a modification of the plan is warranted, a motion can be filed. The debtor cannot use a direct payment to avoid the commitment of his disposable income to his plan. The court has a continuing obligation to monitor the debtor's income and expenses, and the sale of property, in and of itself, does not relieve the debtor from paying his resulting disposable income into the plan.

## CONCLUSION

Based on the foregoing, the Motion to Pay Mortgage Outside Plan is **DENIED**. Mr. Ayodele is directed to file an amended chapter 13 plan that includes his monthly mortgage payment as a claim to be paid by the chapter 13 trustee.[5]

**END OF DOCUMENT**

---

[5] The court believes that the failure to include prepetition arrears in the Proposed Plan is a confirmation issue, and it will be dealt with as such.